UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re

COLONY BEACH and                                    Case No. 8:13-bk-348-KRM
TENNIS CLUB, INC.,
COLONY BEACH, INC.                                  Case No. 8:13-bk-350-KRM
RESORTS MANAGEMENT, INC.,                            Case No. 8:13-bk-354-KRM

                                                    (Jointly Administered under
                                                     Case No. 8:13-bk-348-KRM)

          Debtors.
_____/


MEMORANDUM OPINION ON
MOTIONS FOR SANCTIONS AGAINST COLONY LENDER LLC, ET AL

INTRODUCTION

        The Colony Beach & Tennis Resort (the "Resort") was developed in 1973 by Dr. Murray

Klauber on the Gulf of Mexico in Longboat Key.  About 15 acres of the Resort were put into a

condominium consisting of 232 guest units, that were sold to the owners ("Unit Owners") by

warranty deeds, and common area administered by the Colony Beach and Tennis Club

Condominium Association (the "Association").[1]  The other 3 acres of the Resort, known as the

"Rec Lease Property," included a swimming pool, tennis courts, spa and clubhouse.  The Resort

was operated by a limited partnership, the Colony Beach and Tennis Club, Ltd. (the

"Partnership"), with debtor Resorts Management, Inc. ("RMI"), as its general partner.

        The Resort deteriorated over the past fifteen years and this led to disputes among its

divided owners about how to finance a restoration.  The Partnership sued the Association in 2007

---

[1]  The Unit Owners held legal title to their units, but they were required to contribute them to the Resort for 11
months a year; in return, they were entitled to one month's free use of their unit, subject to the Resort's reservation
policy.  None of these arrangements are available today because the Resort is closed.

to compel a large special assessment.  In 2008, the Association filed for relief under Chapter 11.[2]

In 2009, the Partnership filed for Chapter 11, but the case was converted to Chapter 7 in 2010.[3]

Hotel operations were terminated in 2010 and the Resort has not reopened.  On January 11,

2013, the debtors, which are affiliates of Dr. Klauber, filed Chapter 11 petitions and the cases

were administratively consolidated.[4]  On May 8, 2014, another one of Dr. Klauber's entities,

Colony Investors, Inc., filed for relief under Chapter 7.[5]

Debtors Colony Beach and Tennis Club, Inc. ("CBTC"), and Colony Beach, Inc. ("CBI")

(collectively, the "Debtors") had pledged their 45% and 35% interests in the Rec Lease Property

and in the 99-year lease of that property with the Association (the "Rec Lease") to Bank of

America.  Colony Lender, LLC ("Colony Lender") purchased Bank of America's loans and

acquired the related collateral package.  Even though all of its claims have now been satisfied by

a foreclosure sale of the Debtors' interests in the real estate, Colony Lender commenced an

action to collect from the Unit Owners the accrued rents due since October 2008 under the Rec

Lease.

Colony Lender's rent collection efforts prompted motions by the Debtors' Chapter 7

trustee and the Unit Owners, through the Association, to seek sanctions against Colony Lender

and its development partner, Unicorp National Developments, Inc. ("Unicorp"), and their

respective principals, David Siegal and Chuck Whittall (collectively, "Respondents"), for

---

[2]  The Association's Chapter 11 petition was filed on October 29, 2008.  Case No. 8:08-bk-16972-KRM.

[3]  Case No. 8:09-bk-22611-KRM.  William Maloney is the Chapter 7 trustee.

[4]  These Chapter 11 cases were converted to Chapter 7 on March 25, 2014 (Doc. No. 261).  Douglas Menchise is the Chapter 7 trustee.

[5]  Case No. 8:14-bk-5269-KRM.  Susan Woodard is the Chapter 7 trustee.

violating the automatic stay.[6]  There is no dispute that Colony Lender, as the successful bidder at

the foreclosure sale, acquired the Debtors' combined 80% interest in the Rec Lease Property.

What is disputed is whether Colony Lender was authorized by this Court to enforce its lien rights

against any of its other collateral.  According to the movants, the right to collect accrued, unpaid

rents from the Association, through the proofs of claim they filed in the Association's Chapter 11

case, and from the Unit Owners, under the 1973 Declaration of Condominium, are assets of these

bankruptcy estates; the rights to collect the accrued rents were withheld from the relief granted to

Colony Lender to foreclose on the mortgaged real estate; and, now, these rights are free from

Colony Lender's lien, which has been satisfied.

Colony Lender takes the position that this Court's order granting relief from stay as to the

"real estate collateral" did allow the foreclosure sale of the Rec Lease and, having acquired it

through the foreclosure sale, all of the rents due under the Rec Lease belong to Colony Lender

and are no longer property of the Debtors' bankruptcy estates.[7]  Colony Lender further asserts

that this Court lacks jurisdiction, or should abstain from exercising jurisdiction, to decide what it

acquired in the foreclosure sale.[8]

---

[6]  The Debtors' Chapter 7 trustee (Doc. No. 332, as supplemented by Doc. No. 342) and the Association, on behalf of itself and Unit Owners (Doc. No. 334, as supplemented by Doc. Nos. 359, 367, and 375) filed motions for sanctions against the Respondents.  On September 9, 2014, the Chapter 7 trustee filed a complaint against Colony Lender to determine the parties' respective interests in the Rec Lease and Rec Lease Damages Claims.  8:14-ap-00776-KRM ("AP 776").

[7]  Colony Lender's position is set forth in Doc. Nos. 335, 362, 364, 365, 366, 379, 402, 403.

[8]  Colony Lender cites to various jurisdictional rules and doctrines for the proposition that this Court should not consider the issue of who owns the Rec Lease and the rent due thereunder, which it calls a "non-core" matter:  (a) mandatory abstention, 28 U.S.C. § 1334(c)(2); (b) *res judicata*  as to what was conveyed at the foreclosure sale; (c) collateral estoppel and issue preclusion applicable to movants; and (d) application of  the Rooker-Feldman Doctrine, which bars federal trial courts from reviewing state court proceedings, per *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

For the reasons set forth below, the Court concludes that it has jurisdiction to interpret and apply its own orders, particularly the scope of the orders granting Colony Lender relief from the automatic stay to foreclose on its collateral.  This Court concludes that the "real estate collateral" as to which stay relief was granted for a foreclosure sale included only the Debtors' interests in the parcels of real estate, which were legally described in the foreclosure judgment, plus the improvements thereon.  Colony Lender was never granted permission to enforce its lien against the Debtors' rights to collect accrued rents.  The Court deferred granting relief from stay as to those rights because the validity of Colony Lender's lien was at issue in a pending adversary proceeding.  Now that all of Colony Lender's claims have been satisfied, the rights to collect accrued rent due under the Rec Lease are unencumbered assets of the Debtors' estates.  By acting to collect and obtain possession of those assets, Respondents have violated the automatic stay.  The Court will schedule a hearing to consider the extent of remediation required and the appropriate sanctions to impose.

## BACKGROUND FACTS

### The Rec Lease

The Association was required to lease the Rec Lease Property for 99 years, from 1973 to 2072, at a stated rent plus a Consumer Price Index escalation every 10 years.  The governing Declaration of Condominium incorporates and attaches the Rec Lease and contains a provision (Section 4.4) which purports to make all of the Unit Owners and their units liable for unpaid rent.  Debtors CBTC and CBI owned 45% and 35% interests, respectively, in the Rec Lease Property and in the Rec Lease.[9]

---

[9]  The initial lessor was Colony Beach Associates, Ltd. ("CBA"), but its interests in the Rec Lease Property and Rec Lease were transferred to CBTC (45%), CBI (35%), the Field Family Trust (15%) and the William W. Merrill Revocable Trust (5%).  In 2011, BreakPointe, LLC, an entity generally aligned with the Association, acquired the

The Association's Chapter 11 Case; Rejection of the Rec Lease and the Damages Claims

The Rec Lease rent was current when the Association filed its Chapter 11 petition on October 29, 2008.  Less than two weeks later, the Association moved to reject the Rec Lease, to be effective as of November 10, 2008.[10]  The motion to reject was granted on December 30, 2008[11] and affirmed by the District Court in 2010.  Each of the lessors (CBTC, CBI, the Field Trust and the Merrill Trust) filed proofs of claim (Claims Nos. 16, 19, 20 and 21) in the Association's case.  These proofs of claim are referred to as the "Lease Rejection Damages Claims."[12]

The Association objected to the Lease Rejection Damages Claims in an adversary proceeding that had been removed from state court ("AP 568").[13]  In that proceeding, the Association also sought a declaratory judgment that the Rec Lease was unconscionable and therefore wholly unenforceable.  In January 2010, this Court entered a declaratory judgment that the Rec Lease was not enforceable and disallowed all of the Lease Rejection Damages Claims.  But, the District Court reversed and remanded.  On October 24, 2012, this Court made a Report and Recommendation to the District Court, as instructed on remand, that the four proofs of claim

---

Merrill Trust's 5% interest in the Rec Lease Property and Rec Lease.  The 5% owner, BreakPointe, LLC, removed Colony Lender's state court lawsuit for partition of the co-tenants' respective property interests (Doc. No. 347).  Adv. No. 8:14-ap-810-KRM.

[10] Case No. 8:08-bk-16972-KRM, Doc. No. 21.

[11] Case No. 8:08-bk-16972-KRM, Doc. No. 73.

[12] Upon rejection of the Rec Lease by the Association, the Lessors (CTBC, CBI, Field Trust and Merrill Trust) were allowed to file claims for damages.  Damages for rejection of an executory lease, by law, have the status of a pre-petition general unsecured claim and are capped at an amount specified by a statutory formula:  the greater of the rent reserved by the lease for one year or 15%, not to exceed three years' rent.  11 U.S.C. § 502(b)(6) and (g).

[13] Adv. Pro. No. 8:08-ap-00568-KRM.

be allowed in the aggregate amount of $2,223,391.71.[14]  Entry of judgment in AP 568 was stayed when CBTC and CBI filed their Chapter 11 petitions.

The Association's confirmed Chapter 11 plan requires it to pay the Lease Rejection Damages Claims in quarterly installments over 5 years, with 6% interest, commencing after the amount owed is finally determined – when the Association's appeal rights have been concluded.[15]  If the Lease Rejection Damages Claims are ultimately allowed, the Association will be required to assess Unit Owners to make the payments.  If Unit Owners default on assessed payments, Sections 6.2(c) and (d) of the plan require the Association to record liens against units and foreclose on them.  Article 7.3 of the Association's Chapter 11 Plan also provides for a "channeling" injunction:  the lessors are permanently enjoined, as long as the Association is not in default, from commencing or continuing any action or other proceedings against the Unit Owners and from enforcing any lien or encumbrance against the units.

The Debtors' Bankruptcy Estates

When they filed for Chapter 11 in January 2013, the assets of the Debtors' estates included their combined 80% undivided interest in: (a) the Rec Lease Property; (b) the Rec Lease; and (c) the accrued, unpaid rents due under the Rec Lease from October 29, 2008, as represented by their proofs of claim filed in the Association's Chapter 11 case (the Rec Lease Rejection Damages Claims) and the inchoate claims against the Unit Owners.[16]  CBI also owned of Condominium Units "C" and "E," that were not subject to Colony Lender's mortgage.

---

[14]  AP 568, Doc. No.152.

[15]  The Association's Plan (8:08-bk-16972, Doc. No. 101, modified at Doc. No. 214) was confirmed by this Court by orders (8:08-bk-16972, Doc Nos. 268 and 284), which were affirmed by the District Court on July 30, 2010 (8:08-bk-16972, Doc. No. 308).

[16]  The Debtors listed their "rights under the Rec Lease" on Item 23 of Schedule B (personal property).  Claim No. 21, filed by CBTC, has been recommended to be allowed in the amount of $1,000,525.90, and Claim No. 16, filed by

Even though the $14 million claim of Colony Lender has now been satisfied, other claims remain unpaid in the CBTC and CBI cases. In addition to an unliquidated amount of administrative expense claims, there is an estimated $350,206 of priority claims and an estimated $430,226.55 of general unsecured claims. The Association has filed claims in the Debtors' cases (Claim Nos. 4, 8 and 9).[17] Thus, these estates still require administration.

Colony Lender's Foreclosure

In March 2010, long after the Association had rejected the Rec Lease and the Debtors had filed their proofs of claim for damages, Colony Lender bought Bank of America's claims against the Debtors, the Partnership, Dr. Klauber and others, and the related pledges of collateral, which included: (a) a mortgage on the Debtors' combined 80% interest in the Rec Lease Property; (b) a collateral assignment of their respective interests in the Rec Lease;[18] and (c) a UCC security interest in personal property. Colony Lender also succeeded to the pending state court foreclosure action that Bank of America had begun in 2009.

In 2011, Colony Lender acquired the Field Trust's 15% interest in the Rec Lease Property and in the Rec Lease. But, Colony Lender did not acquire the Field Trust's Lease Rejection Damages Claim against the Association (Claim No. 20).

During the Debtors' Chapter 11 case, the Court entered four orders (Doc. Nos. 97, 161, 225 and 259) modifying the automatic stay to allow Colony Lender to enforce, incrementally, its

---

CBI, has been recommended to be allowed in the amount of $778,187.10. AP 568, Doc. No. 152. The Debtors have not yet acted to collect accrued rents from Unit Owners.

[17] Doc. No. 149, pp. 77-86. The unsecured claims total about $439,031.

[18] The Rec Lease itself was not assigned to Bank of America because the other lessors (the Field and Merrill Trusts) did not execute the assignment. The collateral assignment granted to Bank of America only the Debtors' "interests" in the Rec Lease.

rights against its collateral.  The first of these orders, entered on May 13, 2013, is not in dispute. It allowed Colony Lender to obtain a foreclosure judgment (Doc. No. 97).

The foreclosure judgment was entered on August 27, 2013, in the amount of $14,357,433.00 plus interest (the "Foreclosure  Judgment").  It specifies the property of the Debtors and Dr. Klauber that is to be sold if the judgment amount is not otherwise paid, beginning with the legal descriptions of 8 parcels of land, "together with:"

> (A)  .  .  .  all the improvements now or hereafter erected on such property and all fixtures now or hereafter attached thereto, together with each and every tenements, hereditaments, easements, rights, powers, privileges, immunities and appurtenances thereunto belonging or in anywise appertaining and the reversion and reversions, remainder and remainders, and also all the estate, right, title, interest, homestead, right of dower, separate estate, property, possession and claim whatsoever in law as well as in equity of any mortgagor of, in and to the same in every part and parcel there of unto mortgagee in fee simple.

> (B)  .  .  .  a security interest in all personal property, excluding household goods which are not purchased with the proceeds of the notes, and fixtures affixed to or located on the property described above in Exhibit "A."

> (C)  .  .  .  all rents, leases, issues, profits, revenue, income proceeds and other benefits from the property described in Exhibit "A."

> (D)  All insurance policies and proceeds thereof and all condemnation proceeds, awards, damages, and claims relating to or derived from the property described in paragraphs (A), (B) and (C) hereof.

> (E)  Everything referred to in paragraphs (A), (B), (C) and (D) hereof and any additional property hereafter acquired by an mortgagor and subject to the lien of the mortgage or any part of the properties described herein.

<u>AP 151</u>

Bank of America's UCC financing statement lapsed before the Debtors filed their bankruptcy petitions.  CBTC and CBI filed an adversary proceeding to avoid Colony Lender's lien on personal property, including the Lease Rejection Damages Claims ("AP 151") and

8

accrued rents due under the Rec Lease.[19]  On December 5, 2013, this Court granted the Debtors'

motion for summary judgment, ruling that the Lease Rejection Damages Claims are intangible

personal property and, therefore, no longer encumbered by Colony Lender's UCC lien, which

was unperfected on the petition date.  Colony Lender's security interest was determined to be

"avoidable" under 11 U.S.C. § 544(a).[20]

That ruling was reversed by the District Court.  The District Court reasoned, in an order

entered on July 1, 2014, that the Lease Rejection Damages Claims filed in the Association's case

were claims for rent and "[s]ince the UCC-1 financing statement is not the appropriate vehicle to

perfect a security interest in rents from real property, the lapse of the UCC-1 in this case is

inconsequential."[21]  The District Court remanded with instructions to "reinstate Colony Lender

to its secured status as to rejection damages."[22]  Before this Court could enter the instructed

order, Colony Lender's lien was extinguished by the July 14, 2014, foreclosure sale.

Nevertheless, the Trustee has appealed the District Court's decision to the Eleventh Circuit.[23]

Colony Lender Granted Limited Relief from Stay

After entry of the Foreclosure Judgment and while AP 151 was pending, Colony Lender

renewed its pending requests for permission to complete foreclosure of the Debtors' property.

At a preliminary hearing on September 5, 2013, and with regard to the pending challenge in AP

---

[19]  Adv. Pro. No. 8:13-ap-151-KRM.

[20]  AP 151, Doc. No. 30.

[21]  USDC Case 8:14-cv-00726-JSM, Doc. No. 27 at 6.

[22]  USDC Case 8:14-cv-00726-JSM, Doc. No. 38.

[23]  The Court conducted a status conference on August 1, 2014, to inquire of the parties whether the foreclosure sale mooted the District Court's instruction to reinstate the lien by vacating the order granting summary judgment.  For different reasons, the parties agreed that entry of an order reinstating Colony Lender's lien was unnecessary.

151 to Colony Lender's lien on the Lease Rejection Damages Claims and accrued Rec Lease rents, the Court granted Colony Lender limited relief, to allow it to proceed with a foreclosure sale of only its "real estate collateral," but not until after December 5, 2013 (Doc. No. 161, the "October 10, 2013 Order").

Shortly thereafter, the Debtors asked for reconsideration of the October 10, 2013 Order (Doc. No. 179) because they had achieved a multi-party settlement with the Association, Dr. Klauber, and the Partnership's bankruptcy trustee that would be the basis of plan confirmation (Doc. No. 149).  The Debtors' motion was granted, the stay was re-imposed and Colony Lender's foreclosure sale, noticed for December 6, 2013, was cancelled (Doc. No. 225, the "December 5, 2013 Order").

Ultimately, the Court denied confirmation of the Debtors' plan, denied approval of the multi-party settlement, and converted the Debtors' cases to Chapter 7 because the plan and related proposals did not adequately protect Colony Lender's interests as mortgagee (Doc. No. 256).[24]  Colony Lender filed another motion for relief from stay (Doc. No. 250) requesting permission to "reschedule the foreclosure sale" and was granted that relief (Doc. No. 259).

After another cancelled sale in May, the foreclosure eventually occurred on July 14, 2014.  The published Notice of Sale, just like the two previously published notices, were deliberately crafted to omit Subsection C of the Foreclosure Judgment – "*rents, leases, issues, profits, revenue, income proceeds and other benefits from the property*." [25]

---

[24]  A bench ruling on these matters was put on the record in open court on February 26, 2014; the written opinion and orders were entered on March 21, 2014.

[25]  Notices of Foreclosure Sale were published on October 13, 2013, on March 18, 2014, and on June 4, 2014.

At the foreclosure sale, a third party made an opening cash bid of $15,200,000, which exceeded the amount then due under the Foreclosure Judgment.  Instead of accepting the cash payoff of its judgment, Colony Lender overbid by $1.00, $15,200,001.  This was the final bid accepted by the Clerk of the Circuit Court of Sarasota County, who issued a certificate of title on July 25, 2014; but, the form of certificate included the entire description of property (Subsections "A" through "E") from the Foreclosure Judgment, which was inconsistent with the Notice of Sale.  Colony Lender filed a motion to amend the Certificate of Title, which was granted.  On August 7, 2014, the Clerk issued an Amended Certificate of Title Per Order, which, like the Notice of Sale, excluded Subsections "B" through "E" of the Foreclosure Judgment's description of property.

The Respondents' Rent Collection Actions

Shortly thereafter, Colony Lender and Unicorp undertook steps to induce Unit Owners to convey their interests to Unicorp, which has a plan to acquire and redevelop the entire 18 acres. Mr. Whittall, as Unicorp's President, sent a letter dated August 4, 2014, to the Unit Owners, disclosing that Unicorp was "in the process of acquiring the balance of the assets necessary to go forward" to accomplish its "vision for a beautiful and sumptuous vacation resort on the grounds of the former Colony Beach and Tennis Club;" that Unicorp has "an agreement to acquire Colony Lender's interests in the Resort, including its rights to the recreation facilities, the $2.2 M judgment for rejection damages [the Lease Rejection Damages Claims] and [is] in position to acquire . . . the $23M recommended judgment [the Partnership's claim against the Association in Adv. Pro 8:08-ap-00567-KRM];" and that the Unit Owners would be faced with foreclosure of their units and personal liability.  The letter also included Unicorp's offer of to settle all claims against Unit Owners in return for a deed of their unit.  One option included a $20,000 payment

11

and claims forbearance in exchange for conveyance of the condominium unit to Unicorp; the other options included offers to occupy or buy units in the redeveloped Resort at a discount.

On August 15, 2014, Mr. Siegal, on behalf of Colony Lender, sent Unit Owners a demand letter stating that "by virtue of a foreclosure sale . . . and a purchase from the Field Trust, Colony Lender has succeeded to the [95%] interest of Colony Beach Associates, Ltd (the "Lessor") . . . in that certain [Rec Lease] dated November 29, 1973, by and between the Lessor and ['the Association']." The letter demanded, among other things, that the Unit Owner pay the sum of $5,116,664.24 with per diem interest of $3,274.82 after August 15, 2014. The letter also threatened to hold each of them personally liable for some $42 million (about $181,034 per Unit) of accrued and future rents under the Rec Lease.

Then, on September 16, 2014, Colony Lender sued most all of the Unit Owners in state court, styled as *Colony Lender, LLC v. 1620 Properties LLC, et al.*, Case No. 2014 CA 005408 NC.[26] According to the Verified Complaint (¶ 15), the Unit Owners "are personally jointly and severally liable for all amounts due" under the Rec Lease.[27] The Complaint identifies the "Accrued Rent" under the Rec Lease, from October 29, 2008, through August 15, 2014, as $3,634,528.52 (*Id.* ¶ 20). On September 22, 2014, Colony Lender recorded a notice of *lis pendens* in the Sarasota County Official Records against all of the units.

---

[26] Initially, Colony Lender had filed suit against the Unit Owners in United States District Court on September 12, 2014, but it was voluntarily dismissed for lack of diversity jurisdiction.

[27] The state court complaint is attached as Exhibit A to the Trustee's Memorandum in Connection with Colony Lender's Claim against the Unit Owners (Doc. No. 400) and is in the file in these cases at Doc. No. 400-1.

ANALYSIS

The Automatic Stay

Bankruptcy Code Section 362(a) provides for an automatic stay, effective upon the filing of a bankruptcy petition.  11 U.S.C. § 362(a).  It prohibits actions which would disrupt or interfere with the administration of a bankruptcy estate.  Among other things, the automatic stay prohibits the commencement or continuation of any litigation or legal process against the debtor (§ 362(a)(1)), any act to obtain possession of, or exercise control over, property of the estate (§ 362(a)(3)), and any act to create, perfect or enforce any lien against property of the debtor and of the estate (§ 362(a)(4) and (5)).  Actions that violate the stay, including orders entered by another court, are void. [28]  Equitable relief and monetary sanctions may be imposed to remediate a stay violation, usually to restore the *status quo ante*.[29]

Notwithstanding its broad scope, the automatic stay does not usually protect non-debtors from litigation for obligations that involve the debtor.[30]  Guarantors of a debtor's obligations, for

---

[28]  "The automatic stay is effective against the world regardless of whether a party had notice of the bankruptcy filing or of the automatic stay."  *In re Peralta*, 317 B.R. 381, 389 (9th Cir. BAP 2004).  In the Eleventh Circuit, actions taken in violation of the automatic stay are void *ab initio* and therefore without effect.  *United States v. White*, 466 F.3d 1241, 1244 (11th Cir. 2006) (citing *Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir. 1982)).  This includes orders entered by state courts.  *In re Clarke*, 373 B.R. 769 (Bankr. S.D. Fla. 2006) (quoting *In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir. 1984))."  See also, *In re Newgent Golf, Inc.*, 402 B.R. 424, 433 (Bankr. M.D. Fla. 2009)(Jennemann, J.).

[29]  The Bankruptcy Code permits any person injured by a willful violation of the automatic stay to recover actual damages, including costs and attorney's fees, and sanctions in appropriate circumstances.  See 11 U.S.C. § 362(k); *St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 543 (5th Cir. 2009) (holding that "based on § 362(k)'s plain language, the above-discussed congressional purpose of § 362(k) to provide both debtor and creditor protection, and the weight of authority finding creditor-standing, we hold debtors and creditors are entities whose grievances fall 'within the zone of interests' protected by § 362(k)");  *Pettitt v. Baker*, 876 F.2d 456, 457 (5th Cir. 1989) (concluding that § 362(h), now § 362(k), "creates a private remedy for one injured by a willful violation of an automatic stay").

[30]  "As a general rule, the automatic stay covers only acts against the debtor or property of the debtor's estate.  Absent unusual circumstances, the stay does not reach to preclude acts against non-debtor, third parties."  *In re Jarman*, 2014 WL 4722760, *2 (Bankr. M.D. Ala., Sept. 24, 2014) (citing *Boucher v. Shaw*, 572 F.3d 1087, 1092 (9th Cir. 2009)); *Matter of A&B Heating and Air Conditioning, Inc.*, 48 B.R. 401, 403 (Bankr. M.D. Fla. 1985) ("It

example, are not usually protected by the automatic stay, which protects only the debtor and the bankruptcy estate.[31]  Accordingly, it would not be appropriate for this Court to apply the automatic stay solely to protect the Unit Owners from the rent collection actions.  Nor, should this Court adjudicate what liability Unit Owners may have, if any, under Section 4.4 of the Declaration of Condominium.

<u>Colony Lender's Rent Collection Actions Violate the Automatic Stay</u>.

When the Debtors filed Chapter 11 petitions, they owned their Lease Rejection Damages Claims against the Association (Claim Nos. 16 and 21) and 80% of whatever inchoate claims existed against Unit Owners for accrued and future rent under the Rec Lease.  The Debtors listed their interests in the Rec Lease as personal property on Schedule B (Item 23).  The stay violation alleged here is whether, by attempting to collect from the non-debtor Unit Owners, accrued, unpaid rent, Colony Lender is acting to seize property of the Debtors' estates on which it no longer has a lien.

Colony Lender takes the aggressive posture that it acquired the Rec Lease and the right to collect all unpaid rents by reason of Subsection A of the Foreclosure Judgment (all "estates" and "hereditaments"), notwithstanding that the "all rents and leases" provision of Subsection C was deliberately omitted from the Notice of Sale.  Colony Lender argues that this Court lacks jurisdiction to review the foreclosure process on which it relies.  For their part, movants respond

---

should be noted at the outset that the automatic stay imposed by § 362 does not protect non-debtors and was designed only to protect a [d]ebtor who seeks relief under any operating chapter of the Bankruptcy Code.").

[31]  "It is universally acknowledged that an automatic stay proceeding accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the …debtor." *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1196 (6th Cir. 1983) (citing *Matter of Earth Lite, Inc.*, 9 B.R. 440 (Bankr. M.D. Fla. 1981) in support of the position that guarantors are not entitled to stay relief); *Credit Alliance Corp. v. Williams,* 851 F.2d 119 (4th Cir. 1988); *Otoe County Nat'l Bank v. W&P Trucking, Inc.,* 754 F.2d 881 (10th Cir. 1985).

that the omission of the Foreclosure Judgment's Subsection C ("all rents and leases") from the

Notice of Sale necessarily removed the Rec Lease and all rent claims from the foreclosure sale.

They also argue that accrued, past due rent is personal property as to which stay relief was never

granted.[32]

It is not necessary, however, for this Court to review or alter the state court foreclosure

process to determine whether a stay violation has occurred.  Nor, does this Court have to engage

in an exegesis of the terms included in Subsection A of the Foreclosure Judgment.  The issue here

is whether the result that Colony Lender now proclaims to have achieved was ever authorized by

this Court to be taken.

This matter involves a motion to terminate, annul, or modify the automatic stay.  It is a

core proceeding, over which this Court has subject matter jurisdiction pursuant to 28 U.S.C. §

---

[32]  It appears that the collective rights set forth in Subsection A of the  Foreclosure Judgment is meant to assure that the purchaser at the foreclosure sale acquires the entire fee, from then on, not to convey any particular lease agreement or the right to collect rents that came due before the sale.  There is a sensible distinction between accrued rents, on the one hand, and future, unaccrued rents, on the other:  "Already accrued rents are personalty (choses in action) while rents accruing in the future are incorporeal hereditaments—interests in real property.  This distinction appeals to common sense because "[r]ent accrues on the day it is due, even if it is payable in advance, and it belongs to the person who holds the status of landlord on that date."  *In re Westchase I Associates, L.P.*, 126 B.R. 692, 696 (W.D.N.C. 1991) (emphasis added); *Lipschultz v. Robertson*, 407 Ill. 470, 474, 95 N.E.2d 357, 359 (1950) ("Unaccrued rents are not personal property.  They are incorporeal hereditaments.  They are an incident to the reversion and follow the land. They pass with a sale or devise of the land."); *First & Citizens Nat. Bank of Elizabeth City v. Sawyer*, 218 N.C. 142, 10 S.E.2d 656, 658 (1940) ("While rents accrued are choses in action, the assignment of which does not come within the purview of the statute   requiring registration; rents accruing are incorporeal hereditaments."); *Cent. Pipe Line Co. v. Hutson*, 401 Ill. 447,  450, 82 N.E.2d 624, 625 (1948) ("Unaccrued  rent is part of the land, being an incorporeal hereditament which  follows the land and passes with a devise or sale thereof."); *Blackwell v. Real Estate Comm'n*, 210 A.2d 544, 545-46 (D.C. 1965); *Cont'l Oil Co. v. McNair Realty Co.*, 137 Mont. 410, 426, 353 P.2d 100, 108 (1960) ("[T]he general rule is that, in the absence of a statute or contractual provision to the contrary, rent cannot be apportioned as to time, and as between parties owning property at different times, the owner of the property at the time the rent becomes due is entitled to the rent."); 52A C.J.S. Landlord & Tenant § 1163 (emphasis added) ("As between persons owning the property at different times, in the absence of contract or statutory provision to the contrary, the owner of the property at the time when the rent becomes due generally is entitled to the rent.  Thus, in the absence of a reservation of rents, an alienation of the reversion by the act of the landlord or by force of law entitles the alienee to the subsequently accruing rents.  On the other hand, an assignee of the reversionary interest does not acquire the right to rents theretofore accrued in the absence of an intention to assign such rent.").

157(b)(2)(G).[33]  Moreover, this Court has inherent authority to interpret the effect of its own

orders, including the ones entered in this case modifying the automatic stay.[34]

How can there be any doubt that this Court authorized only the foreclosure sale of the

parcels of real estate with improvements, as legally described in the foreclosure judgment?

Before these cases were administratively consolidated, Colony Lender filed virtually

identical motions for relief from the automatic stay in the CBTC (Doc. No. 24) and CBI (Doc.

No. 23) cases.  In its motions, Colony Lender acknowledged that the Debtors' interests in the

accrued rents were assets of their estates, even describing them as a "receivable."  Colony

Lender described the Debtors' assets as follows:

> "The assets are real estate and money due under a recreational facilities lease.
> The security of Colony Lender is fully set out in its lengthy proof of claim
> filed as Claim No. 3.  The real estate is encumbered by [a] mortgage and the
> recreational facilities lease is encumbered by the security agreement and UCC
> filings set out as Exhibit F to the proof of claim. . . ."

(Doc. No. 24, ¶ 10; Doc. No. 23, ¶11).  Colony Lender's motions further state that "[t]he real

estate assets of CBTC (and CBI) at the Resort are:

- 40% (35%) interest as tenant in common in the swimming pool;

- 40% (35%) interest as tenant in common in the parcel in the southeast corner of
  the  property containing the fitness/laundry and maintenance;

---

[33]  The Bankruptcy Code provides that "[t]he district court in which a case under title 11 is commenced or is pending
shall have exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such
case, and of property of the estate."  28 U.S.C. § 1334(e)(1).

[34]  *Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012) (bankruptcy court necessarily has power
to enforce its own orders regarding its administration of bankruptcy estate); see also, *In re Ranch House of Orange-
Brevard, Inc*., 773 F.2d 1166 (11th Cir. 1985) (bankruptcy Judge who presided over a case from its inception is in
the best position to clarify any apparent inconsistencies in the bankruptcy court's rulings).

Additionally, federal statute 11 U.S.C. § 105(a) gives the court the authority to "*sua sponte,* tak[e] any action or
mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an
abuse of process."  This includes a violation of the automatic stay provision.  *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d
1539, 1542 (11th Cir. 1996).

- 40% (35%) interest as tenant in common in the six (6) courts on the east side of the hotel,

- 40% (35%) interest as tenant in common in the six (6) courts located adjacent to Gulf of Mexico Drive;

- 40% (35%) interest as tenant in common in the spa, meeting room and locker room."

(*Id.*)

The Foreclosure Judgment also distinguished between the land, with legal descriptions, and ". . . all rents, leases, issues . . . from the property described . . . ." (Subsection C).

This Court never modified the automatic stay to allow a foreclosure sale of the Lease Rejection Damages Claims against the Association or collection of the inchoate claims for accrued rents against Unit Owners under the Rec Lease. Nor, can such authorization be implied. When the October 10, 2013 Order was entered, the validity of Colony Lender's lien on the rent collection rights was being challenged in AP 151. Colony Lender's lien to the "receivable," as described in its own motions for relief from stay, was then in question. Accordingly, relief from stay to foreclose on those rights was withheld and deferred.

This is evident from the following colloquy at the hearing which led to the entry of the October 10, 2013 Order:

> THE COURT:  No, I'm lifting the stay.
> MR. ASSAF [for Colony Lender]:  Oh, good, okay.
> THE COURT:  Effective 90 days.
> MR. ASSAF:  Great.
> MR. MARKHAM [for Debtors]:  On the real estate only, Your Honor. . . .
> THE COURT: . . . It's going to be on the real estate, 90 days.  And in the meantime, we'll adjudicate whether your lien attaches to the judgment. . . .
> THE COURT:  And I don't recall which adversary that's in.
> MR. MARKHAM:  Your Honor, that is in Adversary --
> THE COURT:  151?
> MR. MARKHAM:  -- 151.  That's correct, Your Honor --

> THE COURT:  Okay.
>
> MR. MARKHAM:  -- which was on for pretrial today anyway.
>
> MR. ASSAF:  And I will submit an order to you on the lift stay.
>
> THE COURT:  Lift stay, 90 days. That's December 5th.
> You can go back to State  Court, schedule your sale on the real estate
> collateral to occur not before  September 5th (sic).
>
> MR. MARKHAM:  December 5th.
>
> MR. ASSAF:  On all of our collateral?
>
> THE COURT:  On the real estate.
>
> MR. ASSAF:  On the real estate only?
>
> THE COURT:  Only. Because you're not going to get a penny on the other stuff
> for years, so let's do that one by the numbers and do it right. We're going to
> have  a hearing on summary judgment as to whether your lien attaches to it.
>
> MR. ASSAF:  Okay.
>
> THE COURT:  I think that's the way to proceed.

(Doc. No. 143; 9/5/13 Tr. 49:23-52:2).

After entry of the October 10, 2013 Order, Colony Lender published its first notice of foreclosure sale (for a sale to be held on December 6, 2013) and deliberately omitted Subsection C ("rents and leases") from the property to be sold.  The evident purpose of deleting this language was to assure that the foreclosure sale complied with the "real property" limitation of this Court's October 10, 2013 Order.[35]

When this Court granted the Debtors' motion to reconsider, it vacated the October 10, 2013 Order and reimposed the stay (Doc. No. 225).  Later, Colony Lender asked for relief from stay, but only to "reschedule the foreclosure sale."  This specific relief was granted by an order entered on March 25, 2014 (Doc. No. 259).  The only sale to be rescheduled, however, was the one that had been noticed for December 6, 2013, under the limitations of the October 10, 2013 Order.

---

[35] See Declarations of Morgan Bentley, attorney for Colony Lender (Doc. No. 369), and Charles Bartlett, attorney for Debtors (Doc. No. 371).

18

The effect of the March 25, 2014 Order was to restore Colony Lender to the relief that it had been granted by the October 10, 2013 Order – the sale of only the real estate portion of its collateral, with the rights to the Lease Rejection Damages Claims and collection of accrued rents due under the Rec Lease being deferred *pendente lite*.[36]

Colony Lender's only response is that the District Court's reversal in AP 151 had the effect of recharacterizing the rights to collect accrued rents due under the Rec Lease as "real estate" and, thus, retroactively including such rights within the scope of the stay relief granted by the October 13, 2013 Order. But, the District Court's ruling did not become effective until the day after the foreclosure sale.[37] Thus, it could not alter the scope of the previously-granted stay relief, which deferred relief as to the rights at issue in AP 151. Second, the District Court's ruling dealt only with the avoidability of Colony Lender's lien, on the "receivable," as a result of the pre-petition lapse of the UCC financing statement. The ruling did not address, in any way, the scope of stay relief granted by the October 10, 2013 Order.

This Court concludes that it granted relief from the automatic stay for the sale of the real estate parcels and improvements, the collateral that was not at issue in AP 151. Regardless of whether the rights to collect rents are ultimately held to be personalty, real property or both, depending on the distinction between accrued versus future rent, this Court never authorized those rights to be sold in the foreclosure sale.

---

[36] By then, Colony Lender's lien on the Lease Rejection Damages Claims had been avoided by this Court's ruling on December 5, 2013, in AP 151..

[37] Fed.R.Bankr.P. 8017(a) provides that District Court appellate rulings are automatically stayed for a period of fourteen (14) days after entry. Accordingly, the District Court's ruling in the appeal of AP 151 was stayed through and including July 15, 2014.

Willfulness

A willful violation of the automatic stay occurs when the creditor "(1) knew the automatic stay was invoked and (2) intended the actions which violated the stay."[38]  There need not be a specific intent to violate the stay on the part of the violator, the act itself need only be intentional.[39]

Colony Lender argues that even if it did violate the automatic stay, it did not do so willfully because it was acting under the colorable rights derived from the Foreclosure Judgment, the Notice of Sale, and the District Court's reversal in AP 151.  It also argues that this matter is complicated, with no bright line as to when the automatic stay may have been violated.

Colony Lender and the other Respondents are sophisticated, well-represented parties. Since 2010, Colony Lender has participated actively in every phase of the several Colony bankruptcy cases.  When Colony Lender and the other Respondents commenced their effort to collect accrued rents due under the Rec Lease, they did so knowing that:

> (1)  Colony Lender's lien on the Lease Rejection Damages Claims and accrued rents due under the Rec Lease had been avoided by summary judgment in AP 151, prior to the foreclosure sale, and that no order had been entered to reinstate that lien;
>
> (2)  the Foreclosure Judgment, the Debtors' schedules, Colony Lender's motions for relief from stay, and this Court's bench ruling on stay relief all distinguished between Colony Lender's lien on the Debtors' interests in the land with improvements and the "other" collateral, consisting of rights derived from the Debtors' interests in the Rec Lease, including the "receivable," as Colony Lender described it, for the accrued and unpaid rent; and
>
> (3)  the October 10, 2013 Order granted relief to sell only the real estate, which Colony Lender's motion had described as the land

---

[38]  *In re Comoletti*, 2009 WL 4267343, *5 (Bankr. M.D. Fla. 2009) (citing *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1576 (11th Cir.1995)).

[39]  *In re White*, 410 B.R. 322, 326 (Bankr. M.D. Fla. 2009) (citing *Jove Eng'g, Inc.*, 92 F.3d at 1555).

20

with improvements, and that relief from stay as to the "other" collateral (which could only mean the rights to collect on the Lease Rejection Damages Claims and the incohoate claims against Unit Owners was withheld;

       (4)  no order was ever entered granting stay relief as to the rights to collect accrued rents and the other rights to collect rents due under the Rec Lease.

Colony Lender has sued the Unit Owners for their purported "joint and several liability" for the rents that accrued before the foreclosure sale and which have always been assets of the Debtors' estates.  Also, Colony Lender has filed a *lis pendens* over the units.  These actions operate to seize assets of the Debtors' estates – the collection on their Claim Nos. 16 and 21 in the Association's case and on the inchoate claims against Unit Owners for the unpaid, accrued rents under the Rec Lease – that are no longer subject to Colony Lender's lien.

A creditor who seizes collateral does so at its own risk because "it is no answer for the creditor to defend the foreclosure by claiming that the property was not properly covered by the stay."[40]  Thus, "a creditor [that] wishes to seize property for lack of adequate protection, § 362(d)(1), or for lack of equity, § 362(d)(2) . . . cannot do so first and thereby force the debtor to vindicate his rights after the seizure."[41]  Here, Colony Lender – perhaps surprised by having its judgment satisfied by the sale of the Debtors' interests in the land with improvements – has knowingly disregarded the limitations imposed by this Court's orders granting stay relief.  Thus, they have acted willfully to seize assets of these estates without ever having obtained relief from the automatic stay to do so.

---

[40] *In re Chesnut*, 422 F.3d 298, 304 (5th Cir. 2005).

[41] *Id.*

<u>CONCLUSION</u>

Colony Lender and the other Respondents need to acquire the Unit Owners' property to redevelop the entire 18-acre Resort.  Thus, they now proclaim that Colony Lender purchased at foreclosure the Lease Rejection Damages Claims and the rights to collect accrued rents from Unit Owners and that this Court is powerless to alter that result.  But, this Court can interpret and apply its own orders granting relief from stay.

The stay was never lifted as to the Debtors' rights to collect its Lease Rejection Damages Claims against the Association, nor on their inchoate claims against Unit Owners to collect the same accrued, but unpaid, rents.  Thus, those rights could not have been lawfully sold through foreclosure to Colony Lender.  Even if these claims are construed to be "real property," this Court expressly withheld and deferred granting relief from the automatic stay to Colony Lender to enforce its lien against such rights.

Colony Lender was paid in full through the foreclosure sale and has no further lien on those rights, which are now unencumbered assets of the CBTC and CBI estates.  The Court concludes that Respondents have willfully violated the automatic stay by interfering with those estate assets.

Therefore, for the reasons stated herein, the Court concludes that Colony Lender and the other Respondents willfully violated 11 U.S.C. § 362(a)(3).  A hearing will be set for April 14, 2015, regarding the extent of equitable relief and sanctions to be imposed to remediate the

violations, after which orders consistent with this opinion will be entered.

DONE and ORDERED in Chambers at Tampa, Florida, on ___March 18, 2015___.

_____
K. RODNEY MAY
United States Bankruptcy Judge

Clerk's office to serve.